FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

2010 SEP 20 P 4:17

| | |
|---|---|
| CRAIG BROWN | ) |
|       Plaintiff, | ) |
| v. | ) Civil Action No.: 3:10cv668 |
| KENCO LOGISTIC SERVICES, LLC<br>Serve:    CT Corporation System<br>           Registered Agent<br>           4701 Cox Road, Suite 301<br>           Glen Allen, VA 23060 | ) |
|       Defendant. | ) |

## COMPLAINT

Plaintiff Craig Brown ("Brown" or "Plaintiff"), by counsel, states as follows for his Complaint against Kenco Logistic Services, LLC ("Kenco," the "Company," or "Defendant"):

### NATURE OF ACTION

1. This is an action for sexual harassment, race and color discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et. seq.* ("Title VII"). In brief, Kenco, by and through the individuals named herein, harassed, discriminated against, and retaliated against Brown, who at the time was employed by the Company as a warehouse associate. This unlawful conduct was committed primarily by Howard Roberts, Brown's direct supervisor, who, among other things: (i) made numerous sexually inappropriate comments toward Brown and (ii) helped to cause Brown to be terminated in retaliation for his (Brown's) complaints about the harassing conduct. Kenco also treated Brown more negatively and more harshly than his black counterparts, which also lead to his unlawful termination. Brown now brings this action to hold Kenco liable for its multiple acts of wrongdoing.

1

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court herein by 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. The request by Plaintiff for declaratory relief is authorized by 28 U.S.C. §§ 2202.

4. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391, as this is the district and division where a substantial part of the events or omissions giving rise to the claim occurred.

5. All conditions precedent to the filing of this action have been met by Plaintiff, in that se has filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC" or the "Commission") and has filed this action within 90 days of receiving a right-to-sue letter, dated June 23, 2010, from the EEOC.

## PARTIES

6. Plaintiff is an individual resident of Chester, Virginia. He is a white male and his sexual orientation is heterosexual.

7. Kenco is a limited liability company organized under the laws of Delaware with its corporate headquarters located in Chattanooga, Tennessee.

8. Kenco is engaged in the business of third party logistics management and operates a warehouse and order-fulfillment operations facility at 1600 Ruffin Mill Road, Colonial Heights, Virginia. The primary purpose of this facility is to fulfill orders and handle product for the pharmaceutical company, GlaxoSmithKline.

9. Kenco employs greater than 300 employees and, for purposes of this action, is and was Brown's employer within the contemplation of Title VII.

## FACTUAL BACKGROUND

10. At all relevant times from April 14, 2008 to April 2, 2009, Brown was employed by the Company as a warehouse associate. In that capacity, Brown was responsible for unloading trucks, putting away product in the warehouse, verifying quantity counts, and generally assisting with other warehouse duties as needed.

11. At all relevant times during his employment at Kenco, Brown was directly supervised by Mr. Howard Roberts. Upon information and belief, Mr. Roberts' sexual orientation is homosexual.

12. While Brown was employed at Kenco, he was repeatedly subjected to unwanted sexual harassment by Mr. Roberts. Among other things:

- Mr. Roberts told Brown (in the presence of four other co-workers -- Tressy Smith, Mike Gutman, and Jennifer Jones, and Jay Shell) to "*bend down and grab your ankles*";

- When Brown asked Mr. Roberts if he had been calling him earlier in the day regarding work issues, Mr. Roberts replied (in the presence of at least two other Kenco co-workers – Jay Shell and Michelle Talbott) "*I was calling your name in the middle of the night.*"; and

- Just a week before Brown's termination, Mr. Roberts (in the presence of Jay Shell) told Brown to "*blow him on the loading dock*"

13. Brown viewed each of these comments (as well as many other similar comments made by Mr. Roberts during Brown's employment) as sexual harassment. He objected to each of these comments and reported Mr. Roberts to Kenco's human resources department because of the first two of these comments.

14. Brown's complaints made no difference, however, as the third comment was made in March 2009 (the two others were in July 2008) – i.e., long *after* he should have known

3

to stop this vile behavior and long *after* the Company should have assured that such conduct ceased.

15. Moreover, between the time of Brown's initial complaint about Mr. Roberts' behavior (approximately July 2008) and his termination, Mr. Roberts repeatedly "wrote up" and/or disciplined Brown based on bogus accusations of wrongful conduct. Mr. Roberts issued this bogus discipline in direct retaliation for Brown's report of his unlawful harassment to the Company.

16. On or about April 2, 2009, Brown was terminated by Kenco, purportedly for engaging in insubordinate behavior.

17. This justification for Mr. Brown's termination, however, was false. In truth, Brown's termination was the product of both unlawful retaliation and discrimination.

18. First, given that he was terminated within a week of being openly and crudely sexually harassed by Mr. Roberts (whom Brown had already complained about at least once before), Brown, upon information and belief, submits that he was terminated in retaliation for his prior complaints about Mr. Roberts' harassment. Indeed, even if Mr. Roberts was not directly involved in the decision to terminate Brown, his acts of unlawfully disciplining and/or "writing up" Brown in the summer and fall or 2008 in retaliation for Brown's reporting of his harassment to the Company (which unlawful discipline was used as an excuse to justify Brown's termination for his allegedly insubordinate conduct) unlawfully contributed to the Company's decision to terminate Brown.

19. Second, as one of only a few white employees at Kenco's Richmond facility, Brown was treated differently (and more harshly) than his fellow black employees, whose infractions were often far more serious (including safety violations) yet did not result in

4

termination. Indeed, the acting supervisor who evaluated and investigated Brown's alleged insubordinate behavior and, as well, recommended Brown's termination was Ms. Linda Noels, an African-American female who had, on many occasions, been openly hostile to white employees at the Company and who had favored African American employees.

20. Two other facts confirm the unlawful behavior of the two Company supervisors mentioned herein and, relatedly, the lack of their credibility on the justification for Brown's termination. First, subsequent to Brown's termination and at least in part in response to a demand letter sent to Kenco by Brown's attorney, Kenco has terminated both Mr. Roberts and Ms. Morales.

21. Second, following his unlawful termination by Kenco, Brown applied for and received unemployment compensation benefits from the Virginia Employment Commission (the "VEC"). Prior to awarding such benefits, though, the VEC held an evidentiary hearing at which both Brown and Kenco testified as to the underlying alleged reason(s) for Brown's termination. While Kenco argued that Brown was terminated for insubordination, the VEC rejected this argument and, ultimately, awarded benefits to Brown.

## COUNT I
### SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
### (AGAINST KENCO)

22. The allegations of paragraphs 1-21 are realleged as if fully set forth herein.

23. Defendant Kenco is an employer within the meaning of § 701(b) of Title VII, 42 U.S.C. § 2000e(b).

24. Brown is a male and therefore is a member of a group protected under Title VII from harassment on the basis of his sex.

25. Kenco, by and through the actions of Brown's direct supervisor, Howard Roberts, subjected Brown to unlawful sexual harassment through conduct that was (i) unwelcome, (ii) based on his sex, and (iii) severe and pervasive so as to alter the terms and conditions of his employment at the Company.

26. As a result of Kenco's actions, Brown has suffered damages, including back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of future professional opportunities, relocation expenses, damage to his professional career, and personal embarrassment and humiliation.

## COUNT II
## RACE AND COLOR DISCRIMINATION
## (AGAINST KENCO)

33. The allegations of paragraphs 1-21 are realleged as if fully set forth herein.

34. Defendant Kenco is an employer within the meaning of § 701(b) of Title VII, 42 U.S.C. § 2000e(b).

35. Brown is a white Caucasian and as such is a member of a group protected under Title VII from discrimination on the basis of his color and race.

36. Kenco unfairly treated and discriminated against Brown in numerous respects on the basis of his color and race, including, but not limited to, treating him differently (and more harshly) than his fellow black employees, whose infractions were often far more serious (including safety violations) yet did not result in termination, so as to lead to his termination.

37. As a result of Kenco's actions, Brown has suffered damages, including back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of future professional opportunities, relocation expenses, damage to his professional career, and personal embarrassment and humiliation.

## COUNT III
## RETALIATION
## (AGAINST KENCO)

38. The allegations of paragraphs 1-21 are realleged as if fully set forth herein.

39. Defendant Kenco is an employer within the meaning of the Title VII.

40. Brown engaged in protected activity under Title VII when in July 2008 he reported his reasonable belief that Roberts was sexually harassing him.

41. Thereafter, Kenco unfairly treated and retaliated against Brown by, among other things, unlawfully disciplining him and ultimately terminating him because of his protected conduct.

42. As a result of Kenco's actions, Brown has suffered damages, including back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of future professional opportunities, relocation expenses, damage to his professional career, and personal embarrassment and humiliation.

WHEREFORE, Plaintiff respectfully prays that this Court:

A. Accept jurisdiction of this case.

B. Grant Plaintiff a permanent injunction enjoining Kenco from engaging in any practice which discriminates against any employee or applicant for employment on the basis of race or color.

C. Declare that Plaintiff has suffered acts of discrimination and harassment at the hands of the Defendant based on his race and color and has been retaliated against in violation of Title VII.

D. Award Plaintiff compensation for front pay, loss of salary and other benefits, including all fringe benefits to which he would have been entitled had his employment with

Defendant not been interrupted. Such damages shall be in an amount in excess of $300,000.00, the exact amount to be determined at trial.

E. Award Plaintiff compensation for back pay for loss of salary and other benefits, including all fringe benefits to which he would have been entitled had his employment with Defendant not been interrupted. Such damages shall be in an amount in excess of $100,000.00, the exact amount to be determined at trial.

F. Award Plaintiff compensatory damages for the humiliation, damage to his reputation, mental and emotional distress, and pain and suffering that he has experienced and endured as a result of the discriminatory and retaliatory actions of Defendant towards him Such damages shall be in an amount in excess of $300,000.00, the exact amount to be determined at trial.

G. Grant Plaintiff punitive damages against Defendant. Such damages shall be in an amount no less than $300,000.00, the exact amount to be determined at trial.

H. Grant Plaintiff pre-judgment and post-judgment interest on all damages awarded, to the maximum extent allowed by law.

I. Grant Plaintiff his reasonable expenses, costs and attorneys' fees.

J. Grant such other and further relief, including injunctive relief other than that requested above, as to the Court seems just and proper.

**A TRIAL BY JURY IS DEMANDED**

          Respectfully submitted,

          CRAIG BROWN

          By _____
                      Of Counsel

Richard F. Hawkins, III (VSB #40666)
THE HAWKINS LAW FIRM, PC
2222 Monument Avenue
Richmond, Virginia 23220
(804) 308-3040 (telephone)
(804) 308-3132 (facsimile)

    Counsel for Plaintiff